Could you each state your name and who you represent. My name is David Hollins. I'm here on behalf of the appellants, Mr. Maurice Hardaway. Assistant State's Attorney Stacia Weber on behalf of the people of the state of Illinois. First of all, sorry for the delay. I've got to pull out my best I'm calling in sick for work voice because I've just been sick the last few days. And the delay this morning was entirely my fault. And being a plaintiff's lawyer in my practice, I know how to blame people. So I'm going to blame myself today. I apologize. Okay. Fifteen minutes apiece. Save some time for rebuttal. Okay. Let's proceed. Your name again? David Holland. Holland? Yes. Okay. May it please the court. Mr. Maurice Hardaway appears before this court today to ask for a relatively limited form of relief. He's asking for the opportunity to take evidence on his post-conviction pleadings. Because this post-conviction petition is well pled, because it must be liberally construed in his favor, and because there is a substantial showing of a Brady violation, this court should remand the cause for an evidentiary hearing. Can you say there's a Brady violation? I mean, I've read everything. And I guess my question is, if there's, it's not going to change the end result. I see nothing to change the end result. Well, I'm certainly not here to argue that if this had been disclosed, it would result in acquittal. I'm not here to challenge the sufficiency of the state's evidence to sustain a guilty verdict. But at this stage of the pleadings, there is an absolute substantial showing that the nondisclosure possibly could be taken to light to put, to undermine confidence in the jury verdict. And in terms of the potential perjury in this case, the standard is even lower than that. The standard is, is there any reasonable likelihood that Doris's false testimony in this case could have affected the jury verdict? The answer to those questions is yes. In terms of why these pleadings make a showing of a Brady violation, certainly the most critical evidence in this case is the transcript of the sentence reduction. Those transcripts show that that sentence reduction is suspicious in that defense counsel for Doris in no uncertain terms made clear that he expected the lead prosecutor to be present for that sentence reduction. And he didn't just mention the lead prosecutor's name. He did so in his role as the one who is prosecuting Mr. Hardaway. And I think an evidentiary hearing is needed in this case because there are so many collateral questions that are raised by this proceeding. If that part of it doesn't pass the smell test, if it seems like there was something potentially hinky going on, how do you get beyond the fact that there was so much testimony about his involvement, including his own statement of inculpability and the fact that even though in the brief he was claiming that he had some kind of an alibi from his mom, his mom never bailed him out on that. How do you get past the failure of the smell test and then past materiality? The materiality here is in the sense that all of the Brady violations are going to bolstering Doris's credibility. And at trial, the state clearly set this out to be a credibility contest because the jury was charged with having to choose between the prior statement that is inculpatory and the in-court testimony that he did not commit this crime. And the state urged the jury to disregard the in-court testimony and rely on that prior statement by having Doris be the one to guide them to that former statement. In the closing arguments by the state, in the opening closing argument, the second chair prosecutor, he first bolstered Doris's credibility by saying that this is her finest hour. She has the courage to be here. And then he walked the jury through that prior inculpating statement. And it was almost the theme of his closing argument is that we know the prior inculpating statement is true because Doris can corroborate it. He said it shows you that Doris supports the statement that he gave to the state's attorney previously. He went through the prior statement and said that's exactly what Doris testified to. So the state in no uncertain terms made this a credibility contest. And in that sense, there's absolutely a reasonable likelihood that the state relied upon what could be Doris's false testimony in reaching their verdict. I think the cause for concern here is that the jury may have deliberated without hearing all the evidence in this case. And the jury may have deliberated and come to a verdict while considering false testimony that may have been facilitated. But you keep saying may have. So let's just say we decide that we're sympathetic to your posture. That means in any future case when it may have, we would have to go along with you. And that would mean any course such as this one where everything is possible but it's not proven that anything occurred. That's where I'm saying it's almost as though you've got a hypothetical here. Right. And it's for those reasons that I do want to stress to this court that it is a relatively limited form of relief. I mean, these pleadings do show that perhaps something suspicious is going on. And it is possible that if we have an evidentiary hearing in this case, we'll find out that there is no miscarriage of justice in this case. But as Your Honor noted, we simply don't know at this point. I think Illinois Supreme Court case law consistently admonishes courts to not adjudicate these sort of claims on mere pleadings. It's after an evidentiary hearing that we're going to get a full spread of the record, and then I think we can. But I think we might be struggling with something a little bit different. If we assume that there was something, a bit of a deal to get her to come into court and testify without the orange jumpsuit on as you put in your brief, let's assume that that is correct. Okay. The next question is how is that material, how would that have made a difference in light of all the evidence in the case? It would have made a difference because the State was so adamant at trial before the jury to use Doris to come to their conclusion in finding Mr. Hardaway guilty. In fact, in the rebuttal closing argument by the very lead prosecutor, whose conduct is in question here based upon the pleadings, he went before the jury and told the jury that Doris, quote, has no bias, motive, or interest in being here like him, referring to Mr. Hardaway. And then he said he's the only one with motive, bias, or interest. And I think the concern here is that a variety of the arguments made by the State at trial would be severely undermined, if not foreclosed, if either one, Doris had been incarcerated during the trial or it had been disclosed that she actually received her freedom in consideration of her testimony. Also, I think that if this had been disclosed, it would strongly bolster the defense's theory of the case that Doris is not your typical witness. Doris is not a disinterested bystander who happened to see a crime and turn to the police and say, I think I know who did this. Doris participated in this crime. It's, of course, her testimony that she was forced to. But the defense's theory of the case is that Doris is the type of witness who would look to curry favor with the State. She is a crack cocaine addict. She is a habitual criminal. And if it had been disclosed and defense could show that, well, she actually did receive a deal from the State at some point, that's going to be bolstering the defense's theory of the case that Doris is the type of witness to provide the testimony that the State wanted from her. And the State was so adamant at trial that Doris is a critical witness in this case. I'd also like to point out that in terms of your concerns about the evidentiary basis in this case, there are two cases that I'd like this Court to rely upon in remanding for an evidentiary hearing. The first is People v. Allinger. That's from the Illinois Supreme Court. And in that case, the defendant in that case, his fingerprints were at the scene. He had the victim's cash on him. He was actually linked to the gun that committed the murder by way of a prior burglary. And in that case, the State's witness who provided a motive for that crime, he actually testified that one of his charges was dropped in consideration of his testimony in that case. And then at second stage, the pleading showed that actually it might have been several charges that were dropped. And that seems like a fine distinction, but the Illinois Supreme Court remanded for an evidentiary hearing in that case. The second case I'd like this Court to rely upon is People v. Coleman. And I think there's an analogy there in terms of the evidence in that case. And in Coleman, Mr. Coleman actually confessed to four people in, quote, great detail. But at the second stage where the pleading showed that the witness might have been pressured into making an identification and where she alleged that she actually was offered consideration for her testimony, the Illinois Supreme Court remanded for an evidentiary hearing. And that case wasn't even close. That was a unanimous decision. The Illinois Supreme Court said that it was readily apparent that there had to be at least an evidentiary hearing so we can get some sort of final resolution as to whether there was a Brady violation. And in this case, as Your Honor noted, we don't know the full extent of this Brady violation. The evidentiary hearing would only get to the question of whether there was a deal or wasn't a deal between the prosecutor and this witness. Assuming, arguendo, there was a deal, you're still faced with the question of whether your client was prejudiced as a result of that deal. Would it shake our confidence in the verdict had that evidence been brought in? Was he prejudiced to that degree? And we have to look at that in the context of the trial and what other evidence was produced, including his own admission. I think confidence is undermined in this verdict because I think the tenor of the trial would be different. I note that the closing arguments would certainly be different, but even the examination of Doris would be different. I mean, the State did go to some lengths to bolster Doris's credibility. She was employed. I mean, obviously, if she was incarcerated, she wouldn't be employed. Or, on the other hand, if it had been disclosed, it would be certainly harder to argue this. She has no motive at all in testifying. And the cross-examination of Doris would be markedly different. I think the impeachment that came out in this case was general. It went to her general background. It wasn't linked to her testimony directly in this case. I think the tenor of the cross-examination would be, Doris, the only reason you're here today is because you were given your freedom. The only reason that you're out and employed and rehabilitated is because you're here today testifying against my client. So I think confidence is undermined in the sense that there is no disclosure. And in terms of the potential perjury that she was, in leading questions, asked, and this sentence reduction came about through your attorney, well, that's in a sense bolstering her credibility as well. I think the natural inference there is that, well, Doris must have been such a model prisoner that she is worthy of a sentence reduction. So in terms of the idea that the jury might have deliberated over false testimony, at least at this pleading stage, I think there's at least some reasonable likelihood that the jury could have relied on Doris' false testimony, that she didn't have an interest in being an actor, but she did have the courage to be testifying. It was her finest hour in coming in to implicate my client. If there are no further questions, I'll reserve. Thank you. May it please the Court, once again, I'm Assistant State's Attorney Stacia Weber on behalf of the people of the State of Illinois. To be entitled to an evidentiary hearing, defendant must make a substantial showing of a constitutional violation. He has failed to make that substantial showing here. His claim is nothing more than that, a claim. Not only is it not supported, it is entirely rebutted by the record. It came out on direct examination, the circumstances surrounding Doris' plea deal, and on cross-examination by a co-defendant right, she explicitly denied that there was a deal. And this is supported by her cooperation from the very beginning of this case. This murder occurred on October 21, 1996. On October 26, she was already participating with the police. This is well before she was ever arrested for retail theft. She was participating by meeting with Detective Longstreet and identifying co-defendant rights in a photo array. She then went to Area 2 with Detective Longstreet and identified co-defendant rights in a physical lineup. She then again went out in a surveillance van with Detective Bradley, and she identified co-defendant Daniels. She continued to cooperate with the police by identifying this defendant from a photo array at Area 2, and then she went back again the next day to Area 2 to identify a defendant in a lineup. So to say that the only reason that she was testifying was to curry some sort of favor with the state is disingenuous, where the record is clear that she was cooperating with the police and with the state from the very beginning, long before she was ever arrested for retail theft. But what about the situation where you've got a state's attorney who they pass the case, then he doesn't show up, and then the state's attorney all of a sudden goes along and says they don't need him, and then a judge who previously has said he's not going to bend or do anything, all of a sudden gives her half of what she had before. I mean, it creates an inference at least that something transpired by the fact that the judge alone goes ahead. I mean, this judge, by the way, I call him a hammer. He's not one that changes his mind. Well, Your Honor, yes, the circumstances surrounding the plea deal were unusual, but it was also unusual for Doris to be sentenced to not just the maximum term, but an extended term sentence the very first time she was sentenced to imprisonment in the IDOC. That did not take into account her background. It did not take into account the nature of the crimes that she was charged with. It did not take into account her history of drug and alcohol abuse. And it did not take into account the fact that since she had been initially arrested, she was participating in a substance abuse program through Gateway while she was in prison. And all of these things are things that her defense counsel brought out in the motion for reconsideration. And the new three-year sentence was comparable to the three-year sentence she received from the suburbs. This is more than a stretch of the imagination to believe that the case had to be passed and that the prosecutor from the defendant's case in this cause had to be present. I mean, if this were just a simple case of a motion for reduction of sentence by the judge who imposed it, the prosecutors in that courtroom would handle that as a matter of course, as a matter of routine, right? Why would it have to be passed for the prosecutor in this case? Well, again, there's nothing on the record that says why this was passed for the assistant state's attorney or that he even knew it was passed. But up until this point, Doris had been in jail for about six months, and she was a witness in an upcoming trial. It's not a stretch of the imagination to imagine that the state's attorney did want to talk to one of his witnesses to prep her for trial, not to offer a deal. But, again, it's the defendant's burden to show why the case was passed, and he expects you to rely on inference from what he speculates may have happened and that just is not enough to sustain the burden required to proceed to a third-stage allegation. And, again, Justice Moran was not only overseeing Doris' plea deal, but he was the judge on the murder trial. If there was a deal in place and Doris lied about it and the state's attorney was complicit for not correcting her testimony, Judge Moran was complicit for not correcting her testimony because he certainly would have known whether there was a deal in place. There wasn't. On the record, at the resentencing hearing, after they passed it, the judge said, well, the state's attorney's not here. I'm not aware if there's a deal or not. And defense attorney said, I'm not aware if there's a deal or not. I was just going to make my case and have Your Honor rule on it. If the judge isn't aware of a deal and defense attorney isn't aware of a deal, and Doris denies a deal on the record and the state's attorney doesn't correct her testimony, there is no deal. If this court should compare this case to People v. Thurman, that is a very similar situation, where the defendant testified that he was in jail, but it was a mix-up. And then the same day that he testified, he was released from prison with a new sentencing order that took away 160 hours of probation. This court said that that was not enough to make a substantial showing that there had been a deal. And they relied heavily on the fact that that witness, again, like Doris, had participated well before he was arrested and that the sentence was not unlawful. Doris' sentence was not unlawful. It is well within the statutory range for a retail theft crime. It was proper. It was appropriate. And just because the circumstances were unusual doesn't make them untoward. Further, defendant attempts to ignore the substantial showing of a Brady violation. Part of Brady is the materiality prong. He must show that this would make a difference. And this wouldn't make a difference. He had his inculpatory statement. Even if you ignored Doris' testimony whatsoever, his inculpatory statement is enough to convict him. He was charged with home invasion, which he was convicted of, felony murder based on home invasion, which he was convicted of, and the jury was also instructed on an accountability theory. His inculpatory statement is more than enough to support that. He told the state's attorney that they were going to beat Ron. Then he testified that they used Doris to gain access into the apartment. Then they rushed upstairs. And then the defendant yelled, you know, get him, get Ron, because they were there to beat him. That's home invasion. That's felony murder based on home invasion, even if you only take the statement there. Now, defendant does disavow his statement. But any time a defendant pleads not guilty, they're essentially disavowing any inculpatory statements that they made. This wasn't just he said, she said, Doris against defendant's testimony at trial that he didn't make this statement. He was thoroughly impeached. He was impeached by Detective Wolowski, sorry, then Assistant State's Attorney Wolowski, who said that she did not help him concoct a statement, that he did not say that he had been home with his mother, that he did not say that he was attempting to get back at co-defendant Wright because Wright had beat his girlfriend. He was also impeached by co-defendant Daniel's statement.  His statement also contained inconsistencies with Daniel's statement, which shows that he couldn't, he didn't base his statement off of Daniel's statement. ASA Wolowski said that defendant had never seen Daniel's statement, that she hadn't, he hadn't even seen Daniel's statement. And in Daniel's statement, there is nothing about Buddha in defendant's statement. He said that Buddha ordered the hit. The reason they were going over is because Buddha ordered a hit on Ron. And at trial, he tried to say that he didn't know who Buddha was, but Officer Dewan testified that he mentioned when he was first arrested, that he had been there when Buddha ordered the hit, even before he met ASA Wolowski. Defendant testified at trial that only defendant Wright and Willis had guns. However, he was impeached with Daniel's statement that said that Hardaway had the gun. And he was also impeached where he stated that he ran away as soon as shots were fired. Daniel's statement said that defendant yelled headshots and then was the trigger man. So there is, his claim that he has disavowed his statement, that this is just he said, she said, should be ignored because that's just not a legitimate argument. Defendant relies on Olinger and Coleman, and again, those rely on more than this. He does not cite a single case that moves to the third stage evidentiary hearing based on such scant evidence as he has provided. In Olinger, there was an affidavit by the witness's attorney that stated that there had, in fact, been a deal. There was also a report from the Illinois Department of Law that stated that they discussed it with the witness's attorney, and the attorney had said the witness would cooperate in exchange for a multi-jurisdictional deal. Also in Coleman, they had the witness's affidavit, which completely contradicted her testimony at trial. That's not what we have here. We have, you know, asking for an inference based on speculation, and that is just not enough to support moving this case on to third stage conviction. So, Your Honors, for these reasons and those contained in our brief, we ask that you affirm the dismissal of defendant's post-conviction petition. Thank you very much. Thank you. Counsel, I'd like you to address the last point made by your colleague, namely that in Olinger and in Coleman there were affidavits that, you know, undid what was said at trial. Compare that to this case and tell us why you think she's wrong. She's wrong because the affidavit supplied in Coleman made it readily, quote, readily apparent that there had to be an evidentiary hearing. But the Illinois Supreme Court has also made abundantly clear that there's never going to be a requirement at second stage to provide affidavits from an adverse witness. The state is essentially arguing that Mr. Hardaway has to get an affidavit from his own prosecutor, that he has to get an affidavit from the state's own witness who testified against him. There's absolutely no requirement, and that's not enough to distinguish those cases from this case, especially where the evidence in those cases is seemingly a lot stronger than the state's evidence in this case. The state also posits a lot of reasons why the sentence was reduced that are, quote, non-nefarious, as the state calls it in its brief. But I think those positions are self-defeating. If that's really the case, then we should have an evidentiary hearing to get that on the record. It is possible that there will be no impropriety here, but these pleadings at this point raise a substantial concern that the state gave their state's witness her freedom in exchange for her testimony in this case. I want to point out that the state really relies on this Thurman case instead of these Illinois Supreme Court cases, but the Thurman case is distinguishable on two major points. The first is that the pleadings in that Thurman case not only didn't support his allegation of perjury, they actually buttressed the truth of the trial testimony. In that case, the state's witness testified that he didn't get any consideration. The pleading showed that he had pled guilty to six days of time served in some community service. It turned out he'd actually served seven days, and so the judge dropped the community service requirement. And also in Thurman, there were two eyewitnesses to the murder, and the defendant actually admitted to owning the gun that was used in the murders. And in terms of the evidence in this case, the state is still relying on the wrong standard. I mean, the argument that without Doris' testimony, there would have been enough evidence to convict him anyway is simply not the standard. And to say, well, this was not a he said, she said, flies in the face of the state's stance at trial when they were pushing this theory on the jury that Doris is the one you can trust and Mr. Hardaway is the one with motive or bias or interest. That position would be severely undermined if Doris was incarcerated or this had been disclosed. Wasn't her testimony at trial, though, consistent with her pretrial statement? There's no inconsistency, nothing to suggest something of an intervening nature caused her to change her testimony or position, right? At this point, these pleadings don't show that Doris necessarily had a deal the moment she began working with the police, but I don't think it's going to make her later deal immaterial, and it's not going to make the perjury immaterial, because Doris is not this typical witness who is just a disinterested bystander. As I mentioned, I think it would bolster the defense's case if they can show that Doris is the type of witness who would prove. The deal that you're talking about, the benefit that the state gets, according to your theory here, is that she doesn't come in in the orange jumpsuit. It's not that she's going to come in and tell a different story. She's telling the same story she told the police before she got arrested, right? She'll just look like a more bad witness if she finds out about the deal. Is that what you're saying? At this point, based on these pleadings, that is what I'm arguing, but I'm also arguing that we just don't know the full extent of the Brady violation. I think it would be a reasonable inference that as the state is building their case around Doris's credibility from the time that she first goes to the police, and I do want to note she didn't go directly to the police. It was three days later, and then she didn't even identify my client until two weeks after that. But from that point until she picks up the new charge, the state is building their case around her credibility. And when she picks up a new charge, that provides leverage for her to get a deal. I think the facts of the case and the facts of Doris's character lend a lot of credence to the possibility that the state did not want to have their star witness as a prisoner. And again, it would bolster the defense's theory of the case that Doris isn't somebody that the jury should rely upon if they're charged with having to choose between two statements. For those reasons, I would ask that this Court remand the cause for third-stage proceedings under the Post-Conviction Hearing Act. Thank you very much. Thank you very much, Your Honor. Okay, thanks for great briefs and good arguments, and I apologize again for having the sniffles and getting here late. Thank you.